UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MELISSA A. MOORE, | § § § § | |
| Plaintiff, | | |
| v. | § § § § § § § § § § § § | No. _____ |
| NISSAN NORTH AMERICA, INC., JOHN ROBERT EAGLE IMPORTS, LTD d/b/a SOUTHWEST INFINITI and NISSAN MOTOR ACCEPTANCE CORPORATION, | | JURY TRIAL DEMANDED |
| Defendants. | | |

## **PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff Melissa A. Moore (referred to as "Plaintiff") and files this Original Complaint against Defendants Nissan North America, Inc. ("Nissan"), John Robert Eagle Imports, LTD d/b/a Southwest Infiniti ("Southwest Infiniti" or "dealership") and Nissan Motor Acceptance Corporation ("NMAC") (collectively referred to as "Defendants"). In support thereof, she would respectfully show the Court as follows:

### **I. NATURE OF SUIT**

1. Plaintiff's claims arise under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d).

2. Defendants violated the Magnuson-Moss Warranty Act by failing to tender the 2017 Infiniti QX80 VIN No. JN8AZ2NE6H9150071 to Plaintiff free of defects and refusing to repair or replace the defective vehicle.

3. Defendants actions constitutes a breach of the written and implied warranties covering the vehicle and are therefore a violation of the Magnuson-Moss Warranty Act.

## II. Jurisdiction & Venue

4. The Court has federal question jurisdiction of this action pursuant to Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d) and 28 U.S.C. § 1331 in that the dispute involves predominant issues of federal law. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims because said claims are so related to the claims with the Court's original jurisdiction that they form part of the same controversy under Article III of the United States Constitution.

5. Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b)(1), (2) because at least one defendant conducts business and/or resides in the Houston Division of the Southern District of Texas and/or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Houston Division of the Southern District of Texas.

## III. Parties

6. Plaintiff is an individual who resides Harris County, Texas.

7. Defendant Nissan North America, Inc. is a California corporation that may be served with process by serving its registered agent: Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620, Austin, Texas 78701. Alternatively, if the registered agent of Nissan North America, Inc. cannot with reasonable diligence be found at the company's registered office, Nissan North America, Inc. may be served with process by serving the Texas Secretary of State pursuant to TEX. BUS. ORG. CODE § 5.251 and TEX. CIV. PRAC. & REM. CODE § 17.026.

8. John Robert Eagle Imports, LTD d/b/a Southwest Infiniti is a Texas limited partnership that may be served with process by serving its registered agent: Daniel J. Hoops at 9201 N. Central Expressway, Fourth Floor, Dallas, Texas 75231. Alternatively, if the registered agent of John Robert Eagle Imports, LTD cannot with reasonable diligence be found at the company's registered office, John Robert Eagle Imports, LTD may be served with process by serving the Texas Secretary of State pursuant to TEX. BUS. ORG. CODE § 5.251 and TEX. CIV. PRAC. & REM. CODE § 17.026.

9. Defendant Nissan Motor Acceptance Corporation is a California corporation that may be served with process by serving its registered agent: Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620, Austin, Texas 78701. Alternatively, if the registered agent of Nissan Motor Acceptance Corporation cannot with reasonable diligence be found at the company's registered office, Nissan Motor Acceptance Corporation

may be served with process by serving the Texas Secretary of State pursuant to TEX. BUS. ORG. CODE § 5.251 and TEX. CIV. PRAC. & REM. CODE § 17.026.

## IV. CONDITIONS PRECEDENT

10. All conditions precedents have been performed or occurred.

## V. FACTS

### A. THE TRANSACTION

11. Defendant Nissan's United States operations are headquartered in Tennessee; it conducts business in this district and is responsible for the manufacture, distribution of all Nissan and Infiniti automobiles in the United States, as well as engineering design, development, research and development, and manufacturing activities in United States and Mexico.

12. Defendant John Robert Eagle Imports, LTD d/b/a Southwest Infiniti is headquartered in Texas. Southwest Infiniti conducts business in this district and is responsible for the sale and distribution of Infiniti automobiles in the United States.

13. Defendant Nissan Motor Acceptance Corporation is headquartered in Tennessee. NMAC conducts business in this district and is responsible for the financing of Nissan and Infiniti automobiles in the United States.

14. On or about June 2, 2017, Plaintiff purchased what she believed to be a new 2017 Infiniti QX80 VIN No. JN8AZ2NE6H9150071 ("QX80" or the "vehicle") from Southwest Infiniti. The QX80 was purchased primarily for Plaintiff's personal use. The sales contract was presented to Plaintiff at the

dealership and was executed at the dealership. At all times during the transaction dealership personnel held themselves out to be acting on behalf of Nissan, as well as Southwest Infiniti.

15. The sales price of the QX80 was $81,885.00, excluding finance charges. Plaintiff made a down payment of $20,000.00.

16. The contract of sale was assigned to Defendant NMAC.

### B. IMPLIED WARRANTIES

17. As result of the sale of the QX80 by Defendant Southwest Infiniti, an implied warranty of merchantability arose in the transaction which included the guarantee that the QX80 would pass without objection in the trade under the contract description; and that the QX80 was fit for the ordinary purpose for which a QX80 is purchased.

18. Subsequent to the sale, an implied warranty arose in connection with the repairs performed by Defendants Nissan and Southwest Infiniti. Specifically, Defendants Nissan and Southwest Infiniti impliedly warranted that the repair work had been performed in a good and workmanlike manner.

### C. EXPRESS WARRANTIES

19. In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the QX80 occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the QX80 had, in fact repaired the defects.

20. Plaintiff's purchase of the QX80 was accompanied with express warranties offered by Defendant Nissan, and extending to Plaintiff. The warranties were part of the basis of the bargain of Plaintiff's contract for purchase of the QX80.

21. The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship. Any required adjustments would also be made during the basis coverage period. All warranty repairs and adjustments, including parts and labor, were to be made at no charge. Additional warranties were set forth in Nissan's warranty booklet and owners' manual.

### D. ACTIONABLE CONDUCT

22. In fact, and unbeknownst to the Plaintiff, prior to the purchase of the QX80, the vehicle was defective in materials and workmanship. In or around November of 2016 the vehicle was repaired at Southwest Infiniti for the following reason: "The vehicle is jerking. Not running smooth, has a burning smell and the check engine light is on." As a result, Southwest Infiniti ordered "special order parts from Japan" to attempt to repair the defects in materials and workmanship.

23. At the time of Plaintiff's purchase of the QX80, Southwest Infiniti failed to disclose the defect or the attempted repair of the defect.

24. When delivered to Plaintiff, the QX80 was defective in materials and workmanship, such defects being discovered within the warranty period. Within approximately sixty (60) days after the purchase and prior to 1500 miles of use, Plaintiff began experiencing defective conditions with the QX80, specifically the

same defective condition discovered by Southwest Infiniti prior to Plaintiff's purchase: "vehicle is jerking; vehicle is not running smooth; vehicle has a burning smell and the check engine light is on." On August 3, 2017 Plaintiff returned to Defendant Southwest Infiniti for repairs to the defective condition on the vehicle.

25.    Subsequently, Plaintiff has returned the QX80 on three (3) separate occasions for repairs for the same defect, i.e. vehicle is not running smooth, high idling and check engine light is on.

26.    In the four (4) months and 2338 miles following Plaintiff's purchase, the vehicle was in for repairs for the same defect at least five (5) times. In all, the QX80 has been to Southwest Infiniti for repair attempts for the same defect for more than thirty-three (33) days, excluding the repair attempts prior to Plaintiff's purchase. Moreover, as of the date of filing of this suit, the vehicle remains at Southwest Infiniti for attempted repairs of the same defect.

27.    Despite this prolonged period during which Defendants were given the opportunity to repair the QX80 vehicle, the defect causing the check engine light to remain on because the engine idles at a high rate and runs rough remains unrepaired. Defendants failed to repair the vehicle so as to bring it into conformity with the warranties set forth herein.

28.    Such a defect is not only significant by also creates a dangerous condition for Plaintiff, her family and other motorist.

29.    The defects experienced by Plaintiff with the QX80 substantially impaired its use, value and safety. Despite Plaintiff's repeated efforts to allow

Defendants the opportunity to repair the QX80, the nonconforming and defective conditions were never repaired.  From the date of purchase and even prior, the QX80 continues to this day to exhibit all of the nonconformities described herein.

30. Plaintiff directly notified Defendants and about each of the defective conditions on numerous occasions.  Moreover, Plaintiff notified Defendants that she desired a buy-back of the QX80 but Defendants have failed and refused to buy-back Plaintiff's defective QX80.

31. It was only after Plaintiff requested a buy-back from Defendants that she learned that Southwest Infiniti and Nissan were aware of the defect and the attempts to repair the defect prior to her purchase of the QX80 but intentionally failed to notify her prior to purchasing the QX80.

## VI.  COUNT ONE—
## VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT

32. Plaintiff adopts by reference all of the facts set forth above.  *See*, FED. R. CIV. P. 10(c).

33. Plaintiff is a "consumer" as defined in the Texas Deceptive Trade Practices Act ("DTPA"), §17.00 TEX. BUS. COM. CODE:

34. Defendants violated the following provisions of the DTPA:

   a. §17.50(1):  the use or employment of a false, misleading, or deceptive acts of practices as defined in §17.46(b)(5) – (b)(7); §17.46(b)(9), §17.46(b)(12) – (b)(13), §17.46(b)(20), §17.46(22) and §17.46(b)(24) of the DTPA that Plaintiff detrimentally relied upon by Plaintiff;

   b. §17.50(2):  breach of express warranty, as defined in §2.313 of the TEX. BUS. COM. CODE (the warranty failed of its essential purpose

and the Plaintiff was deprived of substantial value of bargain because the defect was not corrected within reasonable time);

    c. §17.50(2): breach of implied warranty to perform repairs in a good and workmanlike manner, as set forth in *Melody Home Mfg. Co. v. Barnes,* 741 S.W.2d 349, 254 (Tex. 1987);

    d. §17.50(2): breach of implied warranty of merchantability as defined in §2.314 of the TEX. BUS. COM. CODE

    e. §17.50(3): an unconscionable action or course of action as defined by §17.45(5).

35. Because of inherent defects in the QX80 which existed at the time the vehicle was sold, the vehicle was not merchantable in that it would not pass without objection in the trade under the contract description and it as not fit for the ordinary purchase for which such automobiles are used. Furthermore, Defendants Nissan and Southwest Infiniti failed to perform the repair work in a good and workmanlike manner. This conduct by Defendants Nissan and Southwest Infiniti, constitute a breach of the implied warranties described above, which is actionable under DTPA, §17.50(a)(2).

36. When the vehicle was not repaired, the express warranties that it would be and had been repaired were breached. Defendant Nissan's breach of the express warranties is actionable under DTPA, §17.50(a)(2).

37. Defendants' Nissan and Southwest Infiniti's statements that the QX80's defects would be and had been repaired misrepresented the characteristics, uses, benefits, standard and quality of Defendants' services.

38. Moreover, Defendants' Nissan and Southwest Infiniti's failed to disclose the known defect and repair attempt to Plaintiff prior to the purchase of the QX80.

39. As a result, these representations and misrepresentations were false, misleading and deceptive as defined in DTPA, §17.46(b)(5) and (b)(7). Further, this conduct is actionable pursuant to DTPA, §17.50(a)(1).

40. There was a gross disparity between the amount of money paid by Plaintiff for the QX80 and the value received by Plaintiff. Consequently, this transaction was unconscionable and is actionable under DTPA, §17.50(a)(3).

41. Defendants violations of the DTPA were committed knowingly and intentionally as defined in §17.45(9) and §17.45(13); thereby entitling Plaintiff to civil penalties, including treble damages.

42. The limited remedy in Defendants' warranty failed of it essential purpose and deprives Plaintiff of the substantial value of the bargain because Defendant Nissan or its authorized dealership, Southwest Infiniti, did not correct the defects within a reasonable amount of time. TEX. BUS. & COM. CODE § 2.719. Therefore, any purported limitation of remedies is ineffective.

43. Further, the exclusion of consequential and incidental damages is unconscionable and therefore unenforceable.

44. Defendants conduct was a producing cause and/or proximate cause of Plaintiff's actual damages.

45. As direct and proximate cause of Defendants' willful violations of their obligations under the DTPA, Plaintiff has suffered actual, consequential and incidental damages, including but not limited to money expended on the purchase of the vehicle; damages associated with the inconvenience suffered as a result of the complete failure of the QX80 to operate properly; the loss of use of the QX80 during the weeks it has and continues to be at the dealership for repairs related to the defects; loss of wages; and attorney's fees.

46. Plaintiff has incurred and will continue to incur damages related to this matter, including but not limited to loss of use. The precise amount of damages is unknown at this present time but it is estimated to be in excess of $100,000.00 and will demonstrated according to proof at trial.

47. Additionally, pursuant to the DTPA, Plaintiff is entitled to recover her attorney's fees and costs related to the prosecution of this matter. As a result of Defendants' conduct, Plaintiff has retained counsel.

### VII. COUNT TWO—VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT

48. Plaintiff adopts by reference all of the facts set forth above. *See*, FED. R. CIV. P. 10(c).

49. Plaintiff is a "consumer" as defined in the Magnuson-Moss Warranty Act ("Warranty Act"), 15 U.S.C. § 2301(3).

50. Defendants Nissan and Southwest Infiniti are "suppliers" and "warrantors" as defined in the Warranty Act, 15 U.S.C. §2301(4)-(5).

51. The QX80 is a "consumer product" as defined in the Warranty Act, 15 U.S.C. §2310(a), because it is normally used for personal purposes and Plaintiff purchased it wholly and primarily for personal use.

52. The express warranties as more fully described above pertaining to the QX80 is a "written warranty" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

53. The actions of Defendants, in failing to tender the QX80 to Plaintiff free of defects and refusing to repair or replace the defective QX80 tendered to Plaintiff constitutes a breach of the written and implied warranties covering the QX80 and are therefore a violation of the Warranty Act.

54. Plaintiff has performed all things agreed upon and required of her pursuant to the purchase agreement and warranty, except as may have been prevented by the conduct of Defendants.

55. As a direct and proximate result of the acts and omissions of Defendants, Plaintiff has been damaged in an amount in excess of $100,000.00.

56. Pursuant to the Warranty Act, 15 U.S.C. §2310(d)(2), Plaintiff is entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees.

57. As a result of Defendants' conduct, Plaintiff has retained counsel.

### VIII. COUNT THREE—LENDER LIABILITY

58. Plaintiff adopts by reference all of the facts set forth above. *See*, FED. R. CIV. P. 10(c).

59. Plaintiff is indebted to NMAC as a result of the purchase of the QX90. Plaintiff is entitled to assert all claims stated about against NMAC as a defense to the debt.

### IX. COUNT FOUR—NEGLIGENT REPAIRS

60. Plaintiff adopts by reference all of the facts set forth above. *See*, FED. R. CIV. P. 10(c).

61. On numerous times between August and September of 2017, Plaintiff delivered the QX80 to Defendants Nissan and Southwest Infiniti for repairs of the defective conditions covered under the express and implied warranties.

62. On each occasion that Plaintiff returned for repairs, Plaintiff was informed and believed that Defendants Nissan and Southwest Infiniti's attempted repairs of the QX80 pursuant to their obligations under the express and implied warranties. Defendants Nissan and Southwest Infiniti owed a duty of care to Plaintiff to perform the repairs on the QX80 in a good and workmanlike manner within a reasonable amount of time. However, Defendants Nissan and Southwest Infiniti breached this duty.

63. Defendants Nissan and Southwest Infiniti's attempted repairs of the vehicle were done so negligently, carelessly and recklessly as to substantially impair the QX80's use, values and safety in its operation and use.

64. None of the repair attempts by Defendants Nissan and Southwest Infiniti ever fully and completely repaired the QX80. Nonetheless, each time Plaintiff picked up the vehicle, Defendants Nissan and Southwest Infiniti

represented to Plaintiff that the repairs were complete and Plaintiff relied upon those representations.

65. As a direct and proximate result of Defendants Nissan and Southwest Infiniti's negligent failure to repair the QX80, Plaintiff was forced to drive a defective and dangerous vehicle. As a further direct and proximate cause of Defendants' failure to repair the vehicle in a timely and good workmanlike fashion, Plaintiff was repeatedly forced to return the vehicle for further repair attempts and be without use of the vehicle for long periods of time at great inconvenience. As a result, Plaintiff sustained damages.

66. As a direct and proximate result of the acts and omissions of Defendants, Plaintiff has been damaged in an amount in excess of $100,000.00, including but not limited to expense associated with returning the vehicle for repairs, loss of wages, loss of use and emotional distress damages.

## X.  REQUEST FOR RECESSION

67. In addition to the monetary damages, Plaintiff seeks the remedy of recession.

68. Plaintiff revokes her acceptance of the QX80 for the reason that its defects substantially impair its value to Plaintiff and acceptance was based on Plaintiff's reasonable reliance upon the false representations and warranties of Defendants, including but not limited to that the defects would and could be repaired. Accordingly, Plaintiff seeks a cancellation of the vehicle purchase transactions and an order from the Court restoring to her the money obtained by

Defendants as a result of the false representations and breaches of warranty. Plaintiff also seeks a cancellation of the debt and offers to return the vehicle to Defendants.

### XI. ADDITIONAL AND PUNITIVE DAMAGES

69. Defendants' conduct in violation of the DTPA was committed knowingly. Accordingly, pursuant to the DTPA Plaintiff seeks an award of additional damages in an amount not to exceed three times the amount of her economic damages.

### XII. JURY DEMAND

70. Plaintiff demands a trial by jury.

### XIII. PRAYER

71. Plaintiff prays for the following relief:

   a. General, special and actual damages;

   b. Rescinding the sale of the 2017 Infiniti QX80 VIN No. JN8AZ2NE6H9150071, and returning to Plaintiff the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs and other damages

   c. Incidental and consequential damages;

   d. Any diminution in value of the 2017 Infiniti QX80 VIN No. JN8AZ2NE6H9150071 attributable to the defects;

   e. Past and future economic damages, including but limited to lost wages;

   f. Emotional distress damages;

   g. Civil and Punitive damages;

    h.  prejudgment interest at the applicable rate;

    i.  postjudgment interest at the applicable rate;

    j.  attorney's fees and costs; and

    k.  all such other and further relief to which Plaintiff and the other nonexempt employees may show herself to be justly entitled.

Respectfully submitted,

MOORE & ASSOCIATES

By: _____
Curt Hesse
State Bar No. 24065414
Federal Id. No. 968465
Bridget Davidson
State Bar No. 24096858
Federal Id No. 968864
Lyric Center
440 Louisiana Street, Suite 675
Houston, Texas 77002
Telephone: (713) 222-6775
Facsimile: (713) 222-6739

**ATTORNEYS FOR PLAINTIFF**